IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.                           CRIMINAL ACTION NO. 2:13-cr-00002

RAYMOND HERSMAN,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending is the United States' motion requesting that the Court determine whether Defendant Raymond Hersman's counsel, William C. Forbes, has a disqualifying conflict of interest and should be removed as counsel in this case.[1] [ECF 41.] Defendant filed under seal his response to the United States' motion contending that Mr. Forbes does not have a conflict of interest.[2] (ECF 42-1.) For the reasons that follow, the Court **GRANTS** the United States' motion, **FINDS** that Mr. Forbes must be disqualified from representation of Defendant in this case, and **DISQUALIFIES** Mr. Forbes from further representation of Defendant.

---

1  The Court notes that William C. Forbes is not related in any way to the Court's law clerk, L. Anna Forbes.

2  Defendant's response was filed as an attachment to Defendant's motion to seal. For good cause shown, the Court **GRANTS** Defendant's motion to seal [ECF 42].

## I. BACKGROUND

On January 3, 2013, a federal grand jury returned a one-count indictment charging Defendant with possession with intent to deliver fifty grams or more of methamphetamine, a Schedule II controlled substance. (ECF 6.) United States Magistrate Judge, Mary E. Stanley, detained Defendant pending trial based, in part, on the seriousness of the offense, the weight of the evidence, and Defendant's significant prior criminal history. (ECF 12.) Trial was set for March 12, 2013.

In February 2013, the United States made its discovery disclosures, and Defendant filed his pre-trial motions. On February 20, 2013, Defendant moved to continue the pre-trial hearing on the grounds that he needed to determine whether a disqualifying conflict of interest existed. (ECF 34.) The Court granted the motion and continued the pre-trial motions hearing to February 28, 2013. On February 27, 2013, the United States filed its motion requesting the Court determine whether Mr. Forbes has a disqualifying conflict of interest. On February 28, 2013, the Court conducted a hearing on the United States' motion. Following the parties' proffers of mostly uncontested evidence and argument by counsel, the Court took the motion under advisement.

## II. DISCUSSION

The United States contends that Defendant's counsel, Mr. Forbes, has a disqualifying conflict of interest because: 1) Mr. Forbes has previously represented three potential witnesses for the United States; and 2) Mr. Forbes, himself, is a potential witness in the case.

More particularly, the United States argues that Mr. Forbes previously represented one of the confidential informants (the "CI") used in the investigation of the defendant in this case, Raymond Hersman. The CI was a subject of a previous and unrelated federal grand jury

2

investigation into a methamphetamine distribution network. Mr. Forbes negotiated an immunity agreement for the CI, and the CI then provided incriminating information to law enforcement about Mr. Hersman. One additional twist is that the CI's sources of the information about Mr. Hersman are: 1) another of Mr. Forbes' former clients, who is also a potential witness in this case; and 2) Mr. Forbes himself.

In addition to the CI, Mr. Forbes also previously represented a second individual in 2006, who the United States represents "will likely testify at the trial in this case." (ECF at 3.) (Although this second individual is publicly identified only as "the Source of Information" (the "SOI"), his or her identity has been disclosed to Mr. Hersman and Mr. Forbes in the course of discovery in this case.) The SOI pleaded guilty in federal court to a methamphetamine conspiracy charge and cooperated, like the CI, with the United States. The SOI implicated Mr. Hersman not only in the crime alleged in the Indictment in this case, but also in uncharged prior methamphetamine "dealings." (*Id.*)

Finally, the United States identifies a third potential witness who was formerly represented by Mr. Forbes. While it is less clear whether this person is likely to be a witness, the United States proffers that this individual has relevant incriminating information about Defendant.

In support of its motion, the United States cites Rule 1.7(a)(1) & (2) and Rule 1.9(a) & (c)(1) of the Model Rules of Professional Conduct, ethical rules which govern attorney conflicts of interest.[3] The United States argues that Mr. Forbes' former representation of these witnesses

---

3  The Local Rules of Procedure for the Southern District of West Virginia require all attorneys practicing in this Court to abide both the American Bar Association Model ("ABA") Rules of Professional Conduct and the West Virginia Rules of Professional Conduct. Although these rules are similar in substance, they are worded differently.

Rule 1.7 of the ABA Model Rules of Professional Conduct provides:

3

**Client-Lawyer Relationship**
**Rule 1.7 Conflict Of Interest: Current Clients**

(a)	Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

    (1)	the representation of one client will be directly adverse to another client; or
    (2)	there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b)	Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

    (1)	the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
    (2)	the representation is not prohibited by law;
    (3)	the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
    (4)	each affected client gives informed consent, confirmed in writing.

\* \* \* \* \*

Rule 1.9 of the ABA Rules of Professional Conduct provides:

**Client-Lawyer Relationship**
**Rule 1.9 Duties To Former Clients**

(a)	A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

(b)	A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client

    (1)	whose interests are materially adverse to that person; and
    (2)	about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter;

unless the former client gives informed consent, confirmed in writing.

(c)	A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

    (1)	use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
    (2)	reveal information relating to the representation except as these Rules would permit or require with respect to a client.

\* \* \* \* \*

constitutes a conflict of interest in that he will not be able to engage in meaningful cross-examination of these former clients. The United States further argues that any verdict against Defendant could later be challenged by Defendant on the grounds that Mr. Forbes' representation of him was constitutionally ineffective because of these various alleged conflicts of interest.

Defendant denies Mr. Forbes has a disqualifying conflict of interest. Although Mr. Forbes admits his prior representation of the three potential witnesses for the United States, he claims that these former clients are "minor witnesses." (ECF 42-1.) Defendant asserts that Mr.

---

Rule 1.7 of the West Virginia Rules of Professional Conduct provides:

**Client-Lawyer Relationship**
**RULE 1.7 Conflict of Interest: General Rule**

(a)     A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

    (1)     the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
    (2)     each client consents after consultation.

(b)     A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

    (1)     the lawyer reasonably believes the representation will not be adversely affected; and
    (2)     the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

\* \* \* \* \*

Rule 1.9 of the West Virginia Rules of Professional Conduct provides:

**Client-Lawyer Relationship**
**RULE 1.9 Conflict of Interest: Former Client**

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a)     represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b)     use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.

Forbes' representation of the CI concluded "approximately 17 months ago" and that any statements the CI made incriminating Defendant were made after Mr. Forbes' representation of the CI ended. (*Id.*) Defendant, presumably referencing the SOI, states that Mr. Forbes' representation of this individual has likewise ended. Defendant also tenders written waivers by Defendant, the CI, the SOI, and a third individual purporting to waive any conflict of interest that Mr. Forbes might have. (ECF 42-2.)

### A. Applicable Law

The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The right to assistance of counsel was designed to assure fairness in the adversary criminal process. *United States v. Morrison*, 449 U.S. 361, 364 (1981). "[T]he purpose of providing assistance of counsel 'is simply to ensure that criminal defendants receive a fair trial.'" *Wheat v. United States*, 486 U.S. 153, 158-59 (1988) (citing *Strickland v. Washington,* 466 U.S. 668, 689 (1984)). "[I]n evaluating Sixth Amendment claims, 'the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such.'" *Id.* at 159 (citing *United States v. Cronic*, 466 U.S. 648, 657, n. 21 (1984)). "Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.* (citations omitted). While a trial court must recognize a presumption in favor of a defendant's counsel of choice, that presumption may be overcome not only by a demonstration of actual conflict but also by a showing of a serious potential for conflict. *Id.* at 164.

An attorney has an actual conflict when he actively represents conflicting interests. *United States v. Tatum*, 943 F.2d 370, 375 (1991) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)). "[A] potential conflict of interest exists if the interests of a defendant *could* place his attorney under inconsistent duties in the future." *United States v. Brodnik*, 710 F. Supp. 2d 526, 541 (S.D. W. Va. 2010) (Berger, J.) (citing *United States v. Jones*, 381 F.3d 114, 119 (2nd Cir. 2004)) (other citations omitted). Although conflicts of interest usually occur when an attorney represents multiple clients, a conflict may also exist between an attorney's private interests and those of the client. *United States v. Magini,* 973 F.2d 261, 263-64 (4th Cir. 1992) (citations omitted). Disqualification may also be appropriate though no conflict of interest exists but circumstances indicate that the attorney has "first-hand knowledge of the events presented at trial." *United States v. Locascio*, 6 F.3d 924, 933 (2nd Cir. 1993). Thus, a defendant's attorney may be disqualified when the attorney might be called as a witness for the defendant or be an unsworn witness for the defendant at trial. *Locascio*, 6 F.3d at 934 ("When an attorney is an unsworn witness . . . , the detriment is to the government, since the defendant gains an unfair advantage, and to the court, since the factfinding process is impaired. Waiver by the defendant is ineffective in curing the impropriety in such situations, since he is not the party prejudiced."); *United States v. Kliti*, 156 F.3d 150, 156 (2nd Cir.1998) ("When faced with an attorney as a sworn or an unsworn witness, the proper recourse is to disqualify the attorney, not to exclude the testimony.") Disqualification, however, is a "drastic remedy" to the unsworn witness problem. *Locascio*, 6 F.3d at 934.

In *Wheat v. United States, supra,* one attorney sought to represent three defendants who were charged in the same marijuana conspiracy. 486 U.S. at 155-56. The United States objected

7

and argued that the attorney's joint representation posed a potential conflict because, first, Mr. Wheat would likely be called as a witness in the trial of one co-defendant and, second, because the attorney represented the other co-defendant, who was likely to be called as a witness against Mr. Wheat. *Id.* All three defendants agreed to their representation by the same attorney and waived any future conflict of interest claims. *Id.* The Supreme Court held that the district court's refusal to allow the attorney to represent Mr. Wheat was within its discretion and did not violate petitioner's Sixth Amendment rights. *Id.* at 164. The Court soundly rejected the argument that waivers by all affected defendants resolved the conflict of interest problem:

> Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them. Both the American Bar Association's Model Code of Professional Responsibility and its Model Rules of Professional Conduct impose limitations on multiple representation of clients. Not only the interest of a criminal defendant but the institutional interest in the rendition of just verdicts in criminal cases may be jeopardized by unregulated multiple representation.

*Id.* at 160 (citations omitted). The Court stated that where a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that defendants be separately represented. *Id.* at 162. Moreover, trial courts must have "substantial latitude" to refuse a waiver of conflicts of interest "not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Id.* at 163. In affording such broad discretion to trial courts, the Supreme Court observed

> Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney

8

> who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics. Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them.

*Id.* at 162-63.

The Fourth Circuit has "rigorously applied" *Wheat*'s rationale and noted that *Wheat* "emphasizes the primacy of the court's concern for integrity of the process." *United States v. Williams*, 81 F.3d 1321, 1324 (4th Cir. 1996) (citing *Hoffman v. Leeke*, 903 F.2d 280, 288 (4th Cir. 1990) (stating that the district court abused its discretion when it refused to disqualify counsel based on a party waiver even though the conflict "was obvious and palpable.")).

In *Hoffman v. Leeke*, Hoffman filed a habeas corpus petition challenging on Sixth Amendment grounds his conviction for being an accessary before the fact in a murder-for-hire scheme involving four other participants. In addition to representing Hoffman, Hoffman's lawyer represented two of the other defendants in the case. These two co-defendants signed plea agreements and agreed to testify against Hoffman. One of these two defendants was the key prosecution witness against Hoffman. *Id.* at 283. The Fourth Circuit stated:

> Permitting a single attorney to engage in the joint representation of codefendants is not a per se violation of the Sixth Amendment right to effective assistance of counsel. However, it is well settled that the Sixth Amendment right to assistance of counsel is breached where one lawyer is required to represent two defendants despite the defendants' conflicting interests. Stated another way, the Sixth Amendment right to counsel includes the right to effective assistance free of conflicts of interest, and in the case of a single attorney representing multiple defendants, free from conflicting interests among each of the defendants. This principle applies to retained counsel as well as to appointed counsel. Whenever a

9

>   defendant is able to demonstrate that his lawyer [is] " 'actively pursued conflicting interests' and 'that [an] actual conflict of interest adversely affected his lawyer's performance,' " constitutional error has occurred, as prejudice is inherent in the conflict.

*Id.* at 285-86 (citations omitted). The Fourth Circuit flatly rejected Hoffman's argument that there was no conflict of interest because the attorney believed that Hoffman and the prosecution's star witness, the attorney's other client, would testify to the same facts. *Id.* at 286. Rather, the court found that this dual representation constituted an actual conflict of interest and stated, "It is difficult for us to understand, and indeed we do not, how advising one client to give a statement and testify to the essential elements of a crime allegedly committed by a second client is not a conflict of interest." *Id.*

   *B. Analysis*

   Defendant's counsel, Mr. Forbes, has several serious potential, if not actual, conflicts of interest in this case. To begin, at the February 28, 2013 hearing, Defendant did not dispute that: the United States will likely call the SOI as a witness against him; the SOI is a former client of Mr. Forbes; that the SOI, pursuant to a plea agreement negotiated by Mr. Forbes, provided incriminating information to law enforcement about Defendant's involvement in the charge contained in the indictment as well as other prior similar conduct; or that the SOI will be a witness against Defendant at trial and at sentencing, if he is convicted. Vigorous cross-examination of witnesses such as the SOI is typical and necessary in cases such as this, and Defendant has offered no reason for the Court to believe that a thorough, searching cross-examination of the SOI should be not be undertaken in this case. The goal of cross-examination for a criminal defense attorney is, of course, to eliminate the witness's utility for the prosecution. Stated differently, absent highly unusual circumstances, Mr. Forbes' aim in cross-examining his former client should be to

discredit him in one or more ways before the jury. This he cannot ethically do. Additionally, the SOI signed a plea agreement. The Court is well-acquainted with the plea agreements offered by the United States in this district and knows that they contain a cooperation provision. In cases where a cooperating defendant testifies at a trial or a hearing pursuant to a plea agreement, the lawyer who represented the defendant and negotiated the plea agreement frequently attends the trial or hearing to ensure that nothing goes awry during his client's testimony. If permitted to remain as counsel in this case, Mr. Forbes would be unavailable to represent the SOI during his testimony because he would be busy representing Defendant.

Compounding the serious potential conflict of interest surrounding the SOI is the fact that Mr. Forbes also previously represented the CI, who, like the SOI, had also been the subject of an unrelated methamphetamine conspiracy. Mr. Forbes successfully negotiated an immunity agreement for the CI. Pursuant to the immunity agreement, the CI provided incriminating information to law enforcement about Defendant. Further aggravating the conflict is the fact that one source of the CI's information was yet another client of Mr. Forbes. And that is not all. The CI will apparently also testify that he obtained incriminating evidence about Defendant from Mr. Forbes himself, a fact which may well make Mr. Forbes a witness in this case. And there is still more. In a police report attached as an exhibit to one of Defendant's pre-trial motions (ECF 40-2), a police officer noted that the CI advised him that Mr. Forbes contacted the CI in April 2012. The CI reported that Mr. Forbes allegedly asked the CI if he heard that Defendant had been arrested in North Carolina. Mr. Forbes then told the CI that Defendant had called Mr. Forbes and told him that the police seized his vehicle. Defendant allegedly told Mr. Forbes that $109,000 was in the engine compartment, and offered to split the money with Mr. Forbes if Mr. Forbes

11

would help the Defendant get the money back. According to the CI, Mr. Forbes was skeptical that the money was really in the car, wanted to know if the CI might be able to confirm that the money would be in the car, and was hesitant to help Defendant without confirmation that the money would be found.

Finally, as if the foregoing were not enough, the United States proffers that it may also use a third former client of Mr. Forbes as a trial witness. Although the United States has not yet interviewed this witness, discovery materials indicate that the witness has incriminating information about Defendant.

In sum, Mr. Forbes has multiple, serious, and stark potential, if not actual, conflicts of interest in this case. At the outset, the Court notes the murky pre-trial stage in which it is forced to decide these weighty questions. The Court does not and cannot at this early stage fully understand all of the nuances of the various interrelationships between Defendant and the various witnesses and Mr. Forbes. The Court cannot know at this stage whether nascent conflicts of interest will devolve into an ethical morass. In light of the fact, however, that two, if not three, of Mr. Forbes' former clients will likely take the stand and offer evidence against Defendant at some point in these proceedings, the interests of Defendant will clearly place Mr. Forbes under inconsistent duties in the future. This is so because Mr. Forbes will undoubtedly have to cross-examine his former clients. Also, it is possible that Mr. Forbes possesses confidential information acquired in the course of his representation of each of these clients that might be useful to Defendant but is information Mr. Forbes may not ethically disclose. Moreover, the fact that Mr. Forbes is, as alleged by the CI, a party to a troubling conversation that incriminates Defendant—and potentially raises professional, if not other concerns for Mr. Forbes—is an

independent reason to disqualify Mr. Forbes. Additionally, because Mr. Forbes has represented several individuals associated with methamphetamine distribution who are either related by blood or otherwise closely connected with one another, Mr. Forbes may well be an unsworn witness in that he may have "first-hand knowledge of the events presented at trial." *Locascio*, 6 F.3d at 933. Such a connection with the case is unfair to the Government because Defendant gains an unfair advantage by having an attorney who has inside information about the facts of the case. Also, this situation impairs the integrity of the truth-seeking function of the federal courts and jeopardizes the public's confidence in the integrity of this Court. The fact that Defendant has signed a written waiver is of no matter under these circumstances because the direct prejudice is to the United States. Additionally, under these facts, the Court has concerns that the waiver may not have been knowingly made where Defendant was not counseled by an outside attorney with no affiliation to the case. Finally, Defendant could, notwithstanding the waiver, later attack the validity of his conviction based on an ineffective assistance of counsel claim.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the United States' motion seeking the Court's determination whether Mr. Forbes has a conflict of interest [ECF 41] and **FINDS** that Mr. Forbes must be disqualified from representation of Defendant in this case based upon the several conflicts of interest discussed herein.

Accordingly, the Court **DISQUALIFIES** Mr. Forbes from representation of Defendant and **ORDERS** that Defendant immediately obtain new counsel.

Believing, for the reasons set forth above, that the ends of justice served by continuing this case outweigh the best interest of the public and the Defendant in a speedy trial, the Court

**GRANTS** a brief continuance in this case. The trial, previously scheduled for March 12, 2013, is **CONTINUED** to **May 14, 2013 at 9:00 a.m.** The parties shall submit their respective witness lists and any proposed voir dire and jury instructions no later than **May 3, 2013.** A pretrial motions hearing is scheduled for **April 29, 2013, at 9:00 a.m**. and any pre-trial motions are due on **April 19, 2013.**

The Court **FINDS** that the time between March 12, 2013, and May 14, 2013, is excludable from the computation of time within which trial must commence, pursuant to 18 U.S.C. § 3161(h)(7)(A).

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:   March 5, 2013

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

14