**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**


UNITED STATES OF AMERICA,


                         Plaintiff,


v.                                              CRIMINAL ACTION NO. 2:13-cr-00002

RAYMOND HERSMAN,


                         Defendant.


**MEMORANDUM OPINION AND ORDER**

Pending is the United States' motion to seal a written waiver of conflict of interest by a client of former defense counsel, William Forbes [ECF 44].   The Court **DENIES** the United States' motion to seal based on the United States' representation that the fact of Mr. Forbes' representation of his client is a matter of public record.

Also pending are Defendant Raymond Hersman's motion to suppress evidence and two related addenda [ECF 17, 40,43].   For the reasons that follow, the Court **DENIES** the motion to suppress.[1]

---

[1] At the April 29, 2013, pre-trial motions hearing the Court ruled on all other pre-trial motions filed by Defendant as follows: The Court **DENIED AS MOOT** Defendant's: (1) motion to change the conditions of his pre-trial incarceration [ECF 16]; (2) motion for disclosure of notice of intent to use Rule 404(b) evidence [ECF 18]; (3) motion to produce additional evidence [ECF 19]; motion to suppress tainted identification [ECF 21]; motion to compel additional production of evidence obtained under color of state law [ECF 23]; motion to compel discovery [ECF 24]; and motion to compel production of omitted discovery [ECF 26].   The Court **DENIED** Defendant's motion for leave to file additional pre-trial motions [ECF 20].

I.      FACTUAL BACKGROUND

The following facts, unless otherwise noted in this opinion, are not in dispute and are derived from evidence produced at the pre-trial motions hearing and various exhibits to the parties' filings:

In early September 2012, J. Christopher Powell and Kevin Allen, local police detectives assigned to the Charleston, West Virginia Metropolitan Drug Enforcement Network Team ("MDENT"), applied for and obtained a Global Positioning Satellite ("GPS") tracking warrant from Judge Richard Facemire, a Clay County, West Virginia Circuit Court judge.[2]   The detectives sought the warrant so that they could install the GPS device on a vehicle that was registered to Farrah Dawn Pauley, Defendant's girlfriend.   Defendant and Ms. Pauley had acquired the car in May 2012, one month after Defendant's former vehicle had been seized by North Carolina law enforcement authorities in connection with Defendant's arrest on charges relating to methamphetamine trafficking charges.   Although the car was registered in Ms. Pauley's name, the car was driven by Defendant.   The detectives believed Defendant was transporting large quantities of methamphetamine from North Carolina for distribution in Clay County.

The GPS search warrant paperwork and the supporting eleven-page affidavit were typewritten, as is customary, prior to presentment to Judge Facemire.   The warrant paperwork consists of three pre-printed standard forms, a complaint and two form search warrants (ECF 40-1 at 1-3.) Each document contains a separate signature line for an issuing magistrate.   On all three signature lines, the word "Magistrate" is marked out by a handwritten interlineation.   An illegible

---

[2] MDENT is a joint federal and state drug investigation task force and is comprised of law enforcement officers from several different agencies.   MDENT officers investigate drug cases throughout the Charleston metropolitan area and coordinate their cases with other federal, state, and local law enforcement agencies.

signature appears on all three signature lines.   Each signature is dated "9/4/12" and each form also bears the typewritten date September 4, 2012.   The first signature is accompanied by the handwritten notation "Circuit Judge."[3]

The detectives initially intended that Detective Powell would be the affiant for the search warrant.   The complaint for the warrant has Detective Powell's name typed at the beginning of the form and once again in the signature block.   The signature block is, however, unsigned. Similarly, the warrant forms also have Detective Powell's name typed in two locations. Additionally, the affidavit begins "Detective J.C. Powell, being duly sworn upon his oath deposes and says the following. . . ."   (ECF 30-1.)   Thereafter, the affidavit sets forth Detective Powell's professional background and the facts which he believed supported a finding of probable cause for issuance of the warrant.   The last page of the affidavit contains a signature block under which "J.C. Powell Task Force Officer Drug Enforcement Agency" is typewritten.   A hand-written mark, however, strikes through "J.C. Powell," and "K. Allen" is hand-written in place of Detective Powell's name.   Detective Allen signed the signature block.

On September 4, 2012, prior to issuance of the GPS search warrant, the detectives, accompanied by a Clay County prosecuting attorney, met with Judge Facemire in his courtroom. The courtroom was closed to the public and the proceeding was tape-recorded.[4]   Judge Facemire placed both detectives under oath.   Detective Allen testified regarding his professional background and the facts supporting a probable cause determination for the GPS warrant.   After

---

[3]   Each of the three documents is stamped and dated September 4, 2012, by the Clay County Circuit Clerk's office. The Clerk's stamp states that the Circuit Clerk certifies that the documents are true copies of court records.   The circuit court clerk signed each official stamp.

[4]   Based on the CD entered into evidence, the proceeding was also reported by a court reporter.   A copy of the transcript, however, was not entered into evidence.   (ECF 30-2 at 1.)

Detective Allen finished with his testimony, the prosecuting attorney asked Detective Powell if he had anything further to add.   Detective Powell stated he did not.

Thereafter, Judge Facemire found that probable cause existed to permit the GPS tracking device on the Mitsubishi Eclipse.   According to Detective Allen's testimony at the suppression hearing, after Judge Facemire found probable cause for the GPS search warrant, Judge Facemire instructed Allen to cross out Detective Powell's name at the end of the affidavit and insert his name.   Allen did what Judge Facemire requested.

The same day Judge Facemire issued the GPS search warrant, the detectives enlisted the assistance of one of the confidential informants (an individual identified at the suppression hearing as "CI #1").   The informant agreed to meet with Defendant and ask him if he could borrow the Mitsubishi.   After obtaining consent to drive the Mitsubishi, CI #1 then drove the vehicle to a location where the detectives could install the GPS device without the risk of Defendant finding out about it.[5]   The location where the officers installed the GPS was in Belva, West Virginia, just outside the jurisdictional limits of Clay County.

With the aid of the GPS device, the detectives monitored the Mitsubishi's movement over the next two-and-a-half weeks.   Late in the evening of September 21, 2012, the GPS tracked the Mitsubishi traveling from Clay County, West Virginia to Fancy Gap, Virginia, a town near the border of North Carolina. The path of travel followed the southern portion of the West Virginia Turnpike.   Shortly thereafter, the Mitsubishi turned around and returned to West Virginia.   At about 4:45 a.m., the Mitsubishi pulled into a Go-Mart gas station in Gauley Bridge, West Virginia. Moments later Lieutenant Chad Napier, a Charleston Police Department assigned to MDENT,

---

[5]   Evidence that CI #1 obtained consent to take the Mitsubishi was adduced on direct examination by defense counsel of Detective Allen at the suppression hearing.   Detective Allen testified that CI #1 obtained "the vehicle consensually."   No other facts on this point were developed.

pulled into the Go-Mart parking lot in an unmarked car.  Lieutenant Napier was one of several undercover officers tracking the Mitsubishi's movement that evening.  Lieutenant Napier observed Defendant sitting in the driver seat of the Mitsubishi.  Within moments Defendant sped off and a brief high-speed chase ensued, but the officers soon lost sight of the Mitsubishi.  The GPS tracking report indicates that Defendant drove at a top speed of 112 miles per hour.  A trooper, however, searched the roadway where Defendant had traveled and found a one-pound package of crystal methamphetamine laying in the middle of the road.  Shortly thereafter, the trooper found a second similar package of methamphetamine.

Two days later one of the police informants advised the detectives that he recently spoke with Defendant.  Defendant told the informant that he had been followed by the police or by possible robbers so he threw the methamphetamine he had out of the car.  Sometime after this incident, one of the informants tipped off Defendant about the GPS device.  Defendant then searched for and located the GPS device and destroyed it.

On December 29, 2012, a federal criminal complaint was filed charging Defendant with possession with intent to distribute methamphetamine and a warrant for Defendant's arrest issued.  On January 3, 2013, a federal grand jury returned a one-count indictment against Defendant charging him with possession with intent to distribute 50 grams or more of "a mixture containing methamphetamine" in violation of 21 USC § 841(a)(1).   On April 23, 2013, a superseding indictment was returned that is identical to the first except for a small modification to the charging language.

## II.    DISCUSSION

Defendant raises numerous arguments in support of his motion to suppress evidence allegedly obtained in violation of his Fourth Amendment rights.   Guiding the Court's analysis is the well-settled principle that the validity of a state-issued warrant will be tested by the Fourth Amendment of the United States Constitution, not by state law.   *United States v. Clyburn,* 24 F.3d 613, 616 (4th Cir. 1994).   Accordingly, "evidence admissible under federal law cannot be excluded because it would be inadmissible under state law."  *Id.*   "[T]he proper standard for evaluating illegal search and seizure claims in federal courts has uniformly been 'whether the actions of the state officials in securing the evidence violated the Fourth Amendment to the United States Constitution.' "  *Id.* (citing *United States v. Eastland*, 989 F.2d 760, 766 (5th Cir.1993)).

### A.    Defendant's Various Challenges to the Validity of the Search Warrant Affidavit

Defendant challenges the validity of the search warrant in several respects.   First, Defendant claims the affidavit for the search warrant is defective because the affidavit states that the affiant is Detective Powell, but the affidavit is signed by Detective Kevin Allen.   He claims that the affidavit is "facially defective and totally invalid" because it "was unsupported by oath or affirmation." (ECF 17 at 2.)   He further argues that there is no evidence that Detective Powell swore to the affidavit and all the allegations in the affidavit are based on his observations not Detective Allen's and, thus, no probable cause existed for issuance of the warrant.   Defendant cites a West Virginia case and Federal Rule of Criminal Procedure 41 in support of his argument.

Defendant's argument is meritless.   As just emphasized, it is fundamental that the Fourth Amendment, not federal rules or state law, governs the admissibility of evidence obtained by state officers but ultimately used in a federal prosecution.  *Clyburn,* 24 F.3d at 616.   The Warrant

Clause to the Fourth Amendment to the Constitution of the United States provides: "[N]o warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." U.S. Const. Amend. 4.   The Warrant Clause requires that warrants: (1) be issued by a neutral and detached magistrate, (2) contain a particular description of the place to be searched, and the persons or things to be seized, and (3) be based upon probable cause, supported by Oath or affirmation.   *Clyburn,* 24 F. 3d at 617.   "The Fourth Amendment does not require that the basis for probable cause be established in a written affidavit; it merely requires that the information provided the issuing magistrate be supported by 'Oath or affirmation.' " *Id.*

Defendant does not dispute that Detective Allen testified under oath or that Judge Facemire was not a neutral and detached judicial officer or that the description of the Mitsubishi Eclipse was not described with sufficient particularity.   Thus, any defects in the written affidavit are legally irrelevant so long as Detective Allen's sworn testimony independently establishes probable cause to support the GPS warrant.    As discussed *infra*, Detective Allen's testimony supported Judge Facemire's probable cause finding and, consequently, Defendant's challenge to the written affidavit must be rejected.

Similarly, Defendant's insistence that Rule 41 of the Federal Rules of Criminal Procedure govern this analysis is unpersuasive.    The Fourth Circuit has stated that

> the question of what law governs the application for a warrant cannot be resolved solely on the basis of the *investigation*'s character, but instead turns on the nature of the *judicial proceeding* undertaken during the course of the investigation, such as a proceeding initiated by the application for a search warrant. Therefore, when a member of a joint task force initiates a proceeding in state court to obtain a search warrant in furtherance of the joint investigation, it is not only relevant to understand the role of federal officers in obtaining the warrant and conducting the search, but it

7

> is also *necessary* to review the details of the proceeding itself to determine what law the warrant will serve and the scope of the warrant.

*United States v. Claridy*, 601 F.3d 276, 282 (4th Cir. 2010).

By its terms, Rule 41's procedural requirements apply "only to federal search warrants involving 'a federal law enforcement officer.' " 24 F. 3d at 616 (citing Rule 41).  The Fourth Circuit has held that the test to be applied in determining whether a state warrant must be obtained in compliance with Rule 41(a) is whether the warrant application was made "at the direction or urging of a federal officer." *Id.* (citing *United States v. Smith*, 914 F.2d 565, 569 (4th Cir.1990)); *see also*, *United States v. MacConnell*, 868 F.2d 281 (8th Cir.1989) (significant prior involvement by federal officers required before search characterized as federal) and *United States v. Bookout*, 810 F.2d 965, 967 (10th Cir. 1987).

In this case, two local law enforcement officers assigned to a joint federal and state task force decided to apply for the GPS warrant in state court.  Defendant offers no authority for the proposition that a West Virginia state court judge is not authorized to issue such a warrant. Additionally, there is no evidence that Detectives Allen and Powell are Special Agents or otherwise are "federal law enforcement officers" within the meaning of Rule 41.[6]  Rather, the record shows that they are local police detectives who work for the MDENT task force, a joint federal and state drug investigation unit.  Moreover, there is no evidence that a federal law enforcement officer even assisted Detectives Allen and Powell in this case, much less directed

---

[6]  Rule 41 (a)(2)(C) provides:  "Federal law enforcement officer" means a government agent (other than an attorney for the government) who is engaged in enforcing the criminal laws and is within any category of officers authorized by the Attorney General to request a search warrant."    The affidavit signature line states that Detective Powell was a task force officer of the "Drug Enforcement Agency."   While it may well be that Detective Powell has been deputized to act on behalf of the United States Drug Enforcement Agency, it is unclear from the record that this is in fact the case, and, thus, the Court cannot assume this to be true.

their actions.   Judge Facemire found probable cause to believe that Defendant was trafficking in methamphetamine in violation of West Virginia's criminal laws.   While Detective Allen did testify on cross-examination that Detective Powell was assigned to a "federal task force" and Allen agreed with defense counsel's characterization that it was "fair" to refer to Detective Powell as a "federal officer," there is scant evidence in the record to support the argument that Rule 41 of the Federal Rules of Criminal Procedure controls this issue.

The Court, however, need not decide that issue because even if the Court assumes for the sake of discussion that Rule 41 applies to this analysis, Defendant's arguments would still fail. Judge Facemire, as is permitted under Rule 41(d), based the GPS warrant, either in whole or in part, on the sworn testimony of Detective Allen.   Rule 41(d)(2)(B) provides:   "Warrant on Sworn Testimony.   The judge may wholly or partially dispense with a written affidavit and base a warrant on sworn testimony if doing so is reasonable under the circumstances."   Rule 41(d)(2)(C) provides that any such testimony "must be recorded by a court reporter or by a suitable recording device, and the judge must file the transcript or recording with the clerk, along with any affidavit." Defendant does not argue that it was unreasonable for Judge Facemire to base the warrant on Detective Allen's testimony or contend that any other violation of Rule 41(d) occurred.   While the recording of the warrant proceeding does not indicate whether Judge Facemire expressly relied on the affidavit in whole or in part, Detective Allen did state that Judge Facemire instructed him to cross out Detective Powell's name and sign his own name to the affidavit, evidencing Judge Facemire's apparent intent that Detective Allen affirm the allegations in the affidavit.   It is a fact that the search warrant forms have Detective Powell's name typewritten on them.   This is, of course, in error.   However, where Detective Powell personally appeared before Judge Facemire,

9

was placed under oath, was asked if he had anything to add to Detective Allen's testimony and stated on the record that he did not, where Detective Allen's sworn testimony provided an adequate factual basis to support a finding of probable cause independent of the affidavit, and where Detective Powell participated in the execution of the warrant, the Court cannot find that the misnaming of the search warrant applicant violated Defendant's Fourth Amendment rights.

Next, Defendant claims that Judge Facemire's signature is illegible and, thus, there is "substantial doubt" that Clay County Circuit Judge Facemire ever signed the warrant.   While it is true that Judge Facemire's signature is illegible, this argument was not seriously pursued at the suppression hearing, no doubt in part because of the undisputed fact that Judge Facemire conducted the tape-recorded search warrant proceeding, the fact that the warrant bears a signature in the space for the judge's signature, and the fact that the warrant is stamped with the circuit court clerk's stamp, which is signed and dated by the clerk.

Defendant next contends that Judge Facemire was not authorized to issue the search warrant under § 62-1D-7 of the West Virginia Wiretapping and Electronic Surveillance Act.   As stated *supra*, it is the Fourth Amendment—not state law—that governs the admissibility of evidence obtained by state officers but ultimately used in a federal prosecution.   *Clyburn*, 24 F.3d at 616.   Even if we were to assume for the sake of discussion that the West Virginia wiretap statute applied, any violation of that law does not *per se* render the warrant invalid.   *Id.*

> B.    *Defendant's Challenge to Judge Facemire's Probable Cause Determination*

Defendant also challenges the sufficiency of the affidavit and Detective Allen's testimony to support a probable cause finding.   He claims the allegations are irrelevant, conclusory, and unsubstantiated.   This argument is unavailing.

Search warrants must be supported by probable cause to satisfy the dictates of the Fourth Amendment. *United States v. Harris*, 403 U.S. 573, 577 (1971).   In reviewing a judicial officer's probable cause determination, the Court must accord "great deference" to the issuing judge's assessment of the facts presented to him.   *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990).   Importantly, "the task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant."   *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).   Probable cause may be established through information from any reliable source, or even through a corroborated anonymous tip. *Illinois v. Gates*, 462 U.S. 213, 231-38 (1983); *Draper v. United States*, 358 U.S. 307, 313 (1959).

Substantial evidence supports Judge Facemire's probable cause finding.   Judge Facemire considered the sworn testimony of Detective Allen presented at the September 4, 2012, GPS search warrant proceeding.   The audio tape of the proceeding runs 14:31 minutes.   Detective Allen testified as follows:   On April 20, 2012, Defendant and two other individuals were arrested in an Elkin, North Carolina hotel.   Police officers seized approximately $25,000 in cash, a quantity of crystal methamphetamine, approximately one pound of marijuana, a firearm, and Defendant's 2004 Dodge Ram truck.   Detective Allen's sources had advised him that Defendant's methamphetamine supplier was based in North Carolina.   Within twenty-four hours of Defendant's arrest, he posted a $200,000 bond and returned to West Virginia.   In May 2012, Defendant and his girlfriend, Farrah Pauley, both of whom were Clay County residents, registered a newly-acquired vehicle, a 2001 Mitsubishi Eclipse, in Ms. Pauley's name.   Ms. Pauley, however, did not possess a valid West Virginia license, which led Detective Allen to believe that

Defendant was the primary driver of the vehicle.   The Eclipse was located in Clay County. Detective Allen checked a West Virginia State Police database that contains information recorded by a license plate recording device located at the northbound mile marker 12 on the West Virginia Turnpike.   The database reflected that the Mitsubishi Eclipse traveled on the Turnpike on May 27, June 11 & 12, July 11, and August 7, 2012.   Based on the foregoing facts, Allen and his colleagues believed that in the next couple weeks Defendant would be making another trip to North Carolina in the Mitsubishi Eclipse to pick up more crystal methamphetamine from Defendant's supplier, return to Clay County, and sell the methamphetamine locally.   Allen searched for registered vehicles in Defendant's name and found none.   The only vehicle currently registered in Ms. Pauley's name was the Mitsubishi Eclipse.   The detectives had talked to "many people in this case, many cooperating individuals in the case" who verified that Defendant sold large quantities of crystal methamphetamine, was doing so in Clay County, and was driving on the interstate.   Allen believed that the confidential informants he used were reliable because the information they provided had been independently corroborated, in particular the circumstances surrounding the 2012 North Carolina drug charge and the dates of Defendant's travel to and from North Carolina.   Additionally, Defendant was convicted in the 1990s of possession with intent to deliver methamphetamine and was currently on bond for the April 2012 North Carolina charge. Allen believed that placing the GPS tracking device on the Mitsubishi Eclipse would permit the officers to monitor Defendant's whereabouts and ultimately stop Defendant when he returned from North Carolina.   Allen requested permission to install the GPS device on either public or private property.   After Detective Allen concluded his testimony, Detective Powell, who was also sworn, was asked if he had anything further to add to Detective Allen's testimony.   Powell stated

that he did not.   These facts are substantial evidence supporting Judge Facemire's probable cause finding.

   *C.  Defendant's Challenge to the Detectives' Execution of the Warrant*

   Defendant also challenges the manner in which the detectives executed the warrant.   He argues that the affidavit states that the detectives sought to place the GPS tracker within the confines of Clay County, but the search warrant was executed outside of Clay County in Belva, West Virginia, a town just outside the southern limits of Clay County in Fayette and Nicholas Counties.[7]   In support of his argument, Defendant cites *United States v. Jones*, 132 S. Ct. 945 (2012) and *United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010).   Defendant also cursorily takes issue with the fact that, after they had obtained the warrant but before they installed the GPS device, the detectives instructed CI# 1 to go to Defendant's home and drive the Mitsubishi to a location where the detectives could install the device without risk of detection by Defendant.

   The United States concedes that the GPS device was installed in Defendant's car at a location outside Clay County.   The United States also concedes that CI #1 went to Defendant's house and drove the vehicle to Belva, West Virginia where the GPS device was installed.   The United States maintains, however, that these facts do not establish any Fourth Amendment violation because the warrant particularly described the place to be searched (the Mitsubishi Eclipse) and the particularity of that description, which included both the vehicle registration number and vehicle identification number, made it unlikely that the officers would search the wrong vehicle.

   Defendant's argument is without merit.   The fact that the GPS device was installed outside of Clay County does not render the warrant constitutionally defective.   As the United

---

[7] The town of Belva, like the entirety of Clay County, is within the confines of the Southern District of West Virginia.

States argues, the Fourth Amendment requires that search warrants particularly describe the place to be searched and items to be seized. *Anderson v. Maryland*, 427 U.S. 463, 480 (1976). A warrant meets this particularity requirement "if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503 (1925). The warrant explicitly describes Defendant's car by make, model, registration number, and vehicle identification number. There can be no question that the officers would be able to find the right "place" to be searched. Under West Virginia law— which does not control the Court's analysis—search warrants may be issued by a magistrate or a judge of a circuit court "within the county wherein the property or person sought is located." W. Va. R. Crim. P. 41(a). There is no question that the Mitsubishi Eclipse was located in Clay County at the time the detectives applied for the warrant. There is also no question that Belva, West Virginia is within the Southern District of West Virginia. Indeed, had the GPS warrant been issued by a federal judge, the officers would have been authorized to execute the warrant anywhere within the Southern District of West Virginia, including Belva, West Virginia. Rule 41(b)(4) of the Federal Rules of Criminal Procedure provides: "[A] magistrate judge with authority in the district has authority to issue a warrant to install within the district a tracking device; the warrant may authorize use of the device to track the movement of a person or property located within the district, outside the district, or both." Thus, assuming all other facts remain the same, where there would have been no constitutional violation had a federal warrant issued by a federal judge, no violation under the Fourth Amendment of the United States Constitution can be reasonably said to have occurred here based on the state-issued warrant.

Taking a different tack, Defendant contends that Rule 41(b)(4) does not permit a state court

judge to issue a GPS tracking warrant.   He reasons that, unlike Rule 41(b)(1), which expressly authorizes state courts of record to authorize search warrants when a federal judge is unavailable, Rule 41(b)(4) makes no such allowance.   Defendant's position is supported by the 2006 Advisory Committee Notes to Rule 41 which state that because tracking may involve inter-district or interstate activity "the Committee believes that only federal judicial officers should be authorized to issue this type of warrant."   In this case, Clay County Circuit Judge Facemire, obviously not a federal judicial officer, issued the warrant.   Assuming that Rule 41 even applies to this analysis, which based on the record is less than clear, a technical violation of Rule 41, without more, does not mandate suppression of evidence in the absence of a constitutional violation.   Defendant has offered no evidence that the detectives acted in bad faith by seeking the warrant from a state court judge.   Defendant has not shown that he has suffered any prejudice in the sense that the GPS warrant would not have ensued but for the procedural mishap. *See, e.g., United States v. Searp*, 586 F.2d 1117, 1125 (6th Cir. 1978); *United States v. Burke*, 517 F.2d 377 (2d Cir. 1975); *United States v. Hall*, 505 F.2d 961 (3d Cir. 1974).    In sum, Defendant has not shown that the execution of the GPS search warrant violated Fourth Amendment principles where probable cause existed for the GPS warrant.

Defendant's reliance on *Jones* and its underlying appellate decision, *Maynard*, is misplaced.   In *Jones*, the Supreme Court held that the attachment of a GPS tracking device to a vehicle and the subsequent use of that device to monitor the vehicle's movements was a search within the meaning of the Fourth Amendment. 132 S. Ct. at 949.   In *Jones*, federal law enforcement officers applied for and obtained a GPS search warrant for a vehicle registered to Jones' wife.   The warrant authorized installation of the GPS device in the District of Columbia

within ten days.   *Id.* at 948.   The agents, however, installed the device on the eleventh day and outside the jurisdictional limits of the District of Columbia.   *Id.*   In affirming the District of Columbia Circuit Court of Appeals' reversal of Jones' conviction, the Supreme Court rejected the Government's argument that no search within the meaning of the Fourth Amendment occurred. The Government contended that Jones had no reasonable expectation of privacy in the undercarriage of the vehicle and in the public locations where the vehicle traveled.   *Id.* at 950. Neither the Supreme Court in *Jones* nor the appellate court in *Maynard*, however, analyzed the validity of warrant because the Government conceded in district court that the warrant had been executed a day beyond the ten-day limit and outside of the jurisdiction of the district court's jurisdiction.   Thus, *Jones* and *Maynard* offer no guidance to the Court on the validity of the Clay County warrant.   Rather, in those cases the Government predicated its argument on the theory that there was no valid warrant.[8]   In any event, unlike the warrant in *Jones*, the warrant here was executed the day it was issued.   The Clay County search warrant commands the officers to execute the warrant "forthwith."   (ECF 40-1 at 3, 4.)   The detectives did just that.   Thus, Defendant's reliance on *Jones* and *Maynard* is entirely unavailing.

Similarly unpersuasive is Defendant's wholly undeveloped objection to the detectives' employment of CI #1 to move the Mitsubishi Eclipse from Defendant's property to a different location just prior to installation of the GPS device.   Defendant cites no case and makes no real argument in support of this unadorned contention.   Rather, Defendant simply states, "Detective Allen inexplicably, unreasonably and unlawfully directed the CI to remove [the Mitsubishi] from the jurisdiction and confines of Clay County, prior to installing said GPS device." (ECF 40 at 8.)

---

[8]   Presumably, the Government in *Jones* could have argued, and perhaps did argue, that installation of the GPS outside the District of Columbia was authorized under Federal Rule of Criminal Procedure 41(b)(2) and thus, any violation of the warrant was limited to its execution one day beyond the time limit provided for in the warrant.

16

Plainly, Defendant's vehicle is an "effect" as that term is used in the Fourth Amendment. *United States v. Chadwick*, 433 U.S. 1, 12 (1977). But it is beyond question that law enforcement officers may use informants, decoys, ruse, and deceit to procure consent from a person under investigation. *See* LaFave, *Search and Seizure*, § 8.2 (discussing *Lewis v. United States*, 385 U.S. 206 (1966), *Hoffa v. United States*, 385 U.S. 293, (1966), and *On Lee v. United States*, 343 U.S. 747 (1952)). As Professor LaFave observes, *Lewis*, *Hoffa*, and *On Lee*

> collectively appear to support the following proposition: when an individual gives consent to another to intrude into an area or activity otherwise protected by the Fourth Amendment, aware that he will thereby reveal to this other person either criminal conduct or evidence of such conduct, the consent is not vitiated merely because it would not have been given but for the nondisclosure or affirmative misrepresentation which made the consenting party unaware of the other person's identity as a police officer or police agent.

*Id.* Here, in response to questions posed by defense counsel at the suppression hearing, Detective Allen testified that CI #1 went to Defendant's house and obtained consent to drive the Mitsubishi. Defendant did not further explore this subject with the witness and raises no argument that the consent was otherwise invalid. Accordingly, the Court rejects this argument.

        D.     *Defendant's Challenge to Detective Allen's Destruction of Evidence*

Defendant argues that "any and all evidence and testimony should be excluded at trial" because the Government destroyed page one of the GPS tracking report. (ECF 40 at 10.) The Government concedes that the first page of the tracking report is not available and that "other evidence from the computer system relating to the GPS device is also unavailable." Detective Allen testified at the suppression hearing that he shredded the first page of the report because that page contained the movement of the detective's vehicle prior to installation of the device on Defendant's car. Allen explained that when he obtained the tracker, he put it in his own car and

the tracker immediately tracked his vehicle's own movements.    Allen stated that at the time he did not think the information concerning his movements could have any relevance to this case. He stated that he knew now that this was a mistake.   Allen stated that the report first indicates the movements of the Mitsubishi on the second-page of the report about two-thirds down the page.

The government has a constitutional duty to disclose to a criminal defendant evidence which is material to the proof of innocence or guilt. *California v. Trombetta*, 467 U.S. 479, 480 (1984); *United States v. Agurs*, 427 U.S. 97 (1976); *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Material evidence is evidence possessing "an exculpatory value that was apparent before the evidence was destroyed, and . . . of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 489.   Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.   *United States v. Sanders*, 954 F.2d 227, 231 (4th Cir. 1992) (citing *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988)). Whether the police officer acted in bad faith "turn[s] on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood*, 488 U.S. at 56 n. *.

Defendant has alleged that the Government has acted in bad faith.   The Court disagrees. The Court closely observed Detective Allen's demeanor as he testified about the circumstances surrounding the destruction of the first page of the GPS report.   His testimony was credible, candid, and forthcoming.   While Allen admitted that destroying the first page of the report was an error in judgment, the Court does not find Detective Allen believed a report of his own vehicle's movements prior to installation of the device on Defendant's car would have any exculpatory value to Defendant at trial.   Moreover, each page of the GPS report is numbered, a fact which

refutes Defendant's theory that the officers had secretly installed the GPS well in advance of obtaining the warrant.   The first entry on the second page of the report is dated "9/4/2012" with a time entry of "1:12 p.m."   If the detectives had illegally installed the device in advance of the warrant, there would almost certainly be several if not many pages preceding the page that is numbered page two.   Moreover, Defendant did not refute Detective Allen's testimony that Defendant, after being tipped off by CI #1 that the GPS device was installed on his car, destroyed the device.   Nor did Defendant rebut Detective Allen's assertion that because the device was destroyed, the detectives canceled the account to avoid the police department being charged a monthly service fee for the device.   Had the account remained active, the tracking report may have still been available from the GPS account. Thus, it appears that Defendant's unrebutted alleged actions contributed to his inability to attain the evidence he now seeks.   Under these circumstances, Defendant cannot credibly complain about his inability to obtain the report from the GPS account.   Defendant will be, however, permitted to vigorously cross-examine Detective Allen on this issue at trial.

> E.     *Defendant's Challenge to Detective Allen's Purported Failure to Return the Warrant to the Clay County Circuit Court*

Defendant contends that all evidence derived from the GPS tracking device must be suppressed because there is no evidence that the warrant or an inventory was ever returned to Clay County Circuit Court.   Defendant claims that he has been "greatly prejudiced" by this alleged violation because had the warrant been returned he "would have access to the original tracking information."   (ECF 40 at 10-11.)

It is apparent to the Court that Defendant was unaware of the evidence that Detective Allen did timely return the warrant to Clay County Circuit Court when he filed his February 26, 2013,

addendum to his motion to suppress.   Defendant's contention is unpersuasive for several reasons. First, Detective Allen testified at the suppression hearing that he did return the warrant within ten days of its execution.   Second, the Government produced a copy of property receipt prepared by Detective Allen. (ECF 49-1 at 1.)   The receipt states that Detective Allen executed the GPS warrant on September 4, 2012, at "18:30" p.m.   In the space provided for an inventory of property seized, a notation reads:    "GPS installed 9-4-12".   The receipt is dated September 6, 2012, and a hand-written notation indicates that the receipt was faxed to "Clay Co." on that same date. Finally, Defendant has not explained to the Court's satisfaction why he thinks he would have had access to the original GPS tracking record itself.   Even assuming Rule 41 of the Federal Rules of Criminal Procedure applied to this analysis, nothing under that Rule requires a law enforcement officer to provide a copy of such a report to the target of the GPS warrant.   Rather, under Rule 41 (f)(2)(B) & (C), the officer must return the tracking warrant to the issuing judge within ten days after the use of the device has ended and must serve a copy of the *warrant* on the person whose property was tracked, unless delayed notice is approved.   There is no requirement that the officer provide the person with the GPS tracking report or any other evidence obtained in the case.   Thus, the Court rejects this argument.

### F.    *Defendant's Motion to Suppress Methamphetamine Found on Roadway*

Finally, to the extent Defendant seeks suppression of the methamphetamine found by the state trooper on the roadway after Defendant sped away from the Gauley Bridge Go-Mart, Defendant's argument is unpersuasive.   The law is well established that a person who voluntarily abandons property loses any reasonable expectation of privacy in the property and is consequently precluded from seeking to suppress evidence seized from the property.   *United States v. Leshuk*,

20

65 F.3d 1105, 1110-11 (4th Cir. 1995) (citing *Abel v. United States*, 362 U.S. 217, 241 (1960); *United States v. Clark*, 891 F.2d 501, 506 (4th Cir.1989) (per curiam).   A person does not voluntarily abandon property when the abandonment results from police misconduct. *Id.*   Based on the Court's findings, however, that the evidence obtained by the law enforcement officers in this case was not procured in violation of the Fourth Amendment, Defendant does not have standing to challenge introduction of the methamphetamine evidence.

III.     CONCLUSION

For the foregoing reasons, the Court **DENIES** the United States' motion to seal [ECF 44] and Defendant's motion to suppress [ECF 17, 40,43].

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:     May 10, 2013

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE